Kaplan Martin

1133 Avenue of the Americas
Suite 1500
New York, New York 10036

(212) 316-9500
rkaplan@kaplanmartin.com

November 20, 2026

**BY ACMS**

Catherine O'Hagan Wolfe, Clerk of Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

*Re:* *Metropolitan Transportation Authority, et al., v. Duffy, et al.*, No. 26-1213 (2d Cir.)

Dear Ms. Wolfe:

On behalf of Plaintiffs-Appellees the Metropolitan Transportation Authority and Triborough Bridge and Tunnel Authority, we write pursuant to Federal Rule of Appellate Procedure 28(j) to inform the Court that on Wednesday, November 18, Defendant-Appellant the Federal Highway Administration (the "FHWA") of the United States Department of Transportation, led by Defendant-Appellant Secretary Sean Duffy, announced $100 million in new funding for projects intended to "decrease congestion" on American roads. *See* **Exhibit A**.

The new Congestion Relief Competitive Grant Program Notice of Funding Opportunity identifies eligible projects as including the "[d]eployment and operation of a system to implement or enforce high occupancy vehicle toll lanes, *cordon pricing*, parking pricing, or *congestion pricing*." *See* **Exhibit B** at 5 (emphases added).[1]

In their brief to this Court, Defendants-Appellants argue that they were "empowered to adjust to changing circumstances or to changed priorities," in seeking to stop Plaintiffs-Appellees from continuing to operate the current Congestion Pricing Program in Manhattan. Dkt. No. 30 at 35. But it is hard to see what has changed about the Trump Administration's priorities given this

[1] When the accompanying public announcement was posted online, it likewise identified "HOV toll lanes, as well as congestion, cordon, and parking pricing programs" as eligible for this new funding. *See* **Exhibit C**. Once this language was picked up by the media, however, the words "congestion" and "cordon" were deleted from the public announcement. *Id.*

Grant Program and its inclusion of cordon pricing and congestion pricing.

Respectfully submitted,

Roberta A. Kaplan

cc: Counsel of Record (via ACMS)

# EXHIBIT A

# Trump's Transportation Department to Invest $100 Million to Tackle Congestion, Deliver Safer U.S. Roads

Wednesday, November 18, 2026

**WASHINGTON, D.C.** – The U.S. Department of Transportation's Federal Highway Administration (FHWA) today announced an investment of $100 million to target and eliminate congestion on American roads and keep families safe.

Funds can be used for projects that decrease congestion, including:

- an integrated system to actively monitor and manage traffic congestion;
- HOV lanes as well as parking pricing programs;
- Daily transit options—including commuter buses and vans, express service, paratransit, on-demand microtransit, and streamlined payment systems.

*"Gridlock is costing Americans time with their families and money from their wallets,"* said **FHWA Administrator Sean McMaster**. *"This program brings much-needed relief to our most congested metropolitan areas. Alongside building new capacity, the program uses cutting-edge technology to maximize the efficiency of our highways."*

This investment builds on the Trump Administration's Freedom to Drive initiative–a national effort that aims to save American families both time and money by focusing on maximizing roadway capacities, fast-tracking projects that alleviate congestion chokepoints, and leveraging American technology and private-sector partnerships.

**Additional Information:**

The Congestion Relief Grant Program aims to alleviate highway congestion and its associated costs by optimizing existing capacity through intermodal integration, demand management, and strategic pricing. It also seeks to enhance system effectiveness while ensuring all solutions remain safe and financially considerate of the traveling public.

Funding may be used for projects that help relieve congestion in areas with a population more than 1 million people, including planning, design, implementation, and construction. The Notice of Funding Opportunity outlines the application criteria. Applicants are encouraged to submit eligible projects as soon as possible but must do so by December 17, 2026.

###

## Related Links

- Freedom to Drive (F2D) Initiative

## Contact Us

FHWA Office of Public Affairs
U.S. Department of Transportation, Federal Highway Administration, Office of Public Affairs
1200 New Jersey Avenue, SE
Washington, DC 20590
United States

**Email:**
FHWA.PressOffice@dot.gov

U.S. DEPARTMENT OF TRANSPORTATION

**Federal Highway Administration**

1200 NEW JERSEY AVENUE, SE

WASHINGTON, DC 20590

202-366-4000

Subscribe To Email Updates

**About**

- About FHWA
- Careers
- Org Chart
- Staff Directories
- Work with Us

**Programs**

- Acquisition Management
- Federal Lands Highway
- Infrastructure
- Innovative Program Delivery
- Operations
- Planning, Environment, and Realty
- Policy
- Research, Development, and Technology
- Safety

**Policies, Rights, Legal**

- About DOT
- Accessibility
- Budget and Performance
- FHWA Mobile Apps Privacy Policy
- FOIA
- Information Quality
- No FEAR Act
- Office of Inspector General
- Privacy Policy
- USA.gov
- Web Policies and Notices
- Web Standards

**News & Events**

- Newsroom
- Press Releases
- Speeches & Testimony
- Media Contacts
- Connect with Us

# EXHIBIT B

# Fiscal Years 2025 and 2026 Congestion Relief Program
# Notice of Funding Opportunity

**Application Opening Date: November 17, 2026**
**Application Closing Date:  December 17, 2026**

**U.S. Department of Transportation**

**Federal Highway Administration**

**Fiscal Years 2025 and 2026 Notice of Funding Opportunity**

**Congestion Relief Competitive Grant Program**

**Table of Contents**

**A. BASIC INFORMATION** .......... 2
**B. ELIGIBILITY** .......... 3
**C. PROGRAM DESCRIPTION** .......... 6
**D. APPLICATION CONTENTS AND FORMAT** .......... 8
**E SUBMISSION REQUIREMENTS AND DEADLINE** .......... 9
**F. APPLICATION REVIEW INFORMATION** .......... 11
**G. AWARD NOTICES** .......... 22
**H. POST-AWARD REQUIREMENTS AND ADMINSTRATION** .......... 22

## A. BASIC INFORMATION

| The applicant should read this notice in its entirety, so they have the information they need to submit eligible and competitive applications. | |
|---|---|
| **Federal Agency Name** | U.S. Department of Transportation (DOT)<br>Federal Highway Administration (FHWA) |
| **Funding Opportunity Title** | Congestion Relief Competitive Grant Program |
| **Announcement Type** | This is a new Notice of Funding Opportunity (NOFO). |
| **Funding Opportunity Number** | **FHWA-CRPP-27-001** |
| **Assistance Listing Number(s)** | 20.269 |
| **Funding Details** | This NOFO will award up to $100 million in Fiscal Years (FYs) 2025 and 2026 funding through cost reimbursable grants. DOT may also award any remaining and available funds from prior fiscal years under this opportunity.<br><br>This NOFO rescinds, supersedes, and replaces the prior NOFO for this program.<br><br>The actual amount available to be awarded under this notice will be subject to the availability of funds.<br><br>There is a $10 million statutory minimum award amount ($12.5 million minimum total project cost) for Congestion Relief Competitive Grant Program awards (23 United States Code (U.S.C.) 129(d)(5)(D)).<br><br>There is a minimum non-Federal cost share of 20 percent of the total eligible project cost. Applications not providing at least the minimum non-Federal cost share will be classified as ineligible. |
| **Key Dates** | Application Due Date: 12/17/2026 at 11:59 PM EST.<br><br>DOT anticipates announcing award selections in early 2027. |

| | |
|---|---|
| **Executive Summary** | The purpose of the Congestion Relief Competitive Grant Program is to provide competitive grants to eligible entities to advance innovative, integrated, and multimodal solutions to highway congestion in the most congested metropolitan areas of the United States.<br><br>Eligible applicants under the Congestion Relief Competitive Grant Program are:<br>• States[1], for the purpose of carrying out a project in an urbanized area with a population of more than one million.<br>• Metropolitan planning organizations, cities or municipalities, for the purpose of carrying out a project in an urbanized area with a population of more than one million. |
| **Agency Contact Information** | U.S. Department of Transportation<br>Federal Highway Administration<br>Office of Administration<br>Office of Competitive Grants and Workforce Programs<br>1200 New Jersey Avenue, S.E.<br>Washington, D.C. 20590<br>Email: congestion.relief@dot.gov |
| **Changes from Prior NOFO** | • Removes references to rescinded Executive Orders (E.O.).<br>• Rescinds the prior NOFO.<br>• Aligns the NOFO with current E.O.s and Trump Administration priorities.<br>• Updates application evaluation criteria.<br>• Adds a required application form. |

## B. ELIGIBILITY

### 1. ELIGIBLE APPLICANTS

See Section A for a list of eligible applicants.

[1] This NOFO uses the definition of “State” at 2 Code of Federal Regulations (CFR) § 200.1.

Multiple entities submitting a joint application should identify a lead applicant as the primary point of contact and recipient for purposes of financial administration of the project. The lead applicant must be an eligible entity. Joint applications should include a description of the roles and responsibilities of each applicant and should be signed by each applicant.

## 2. ADDITIONAL RESTRICTIONS ON ELIGIBILITY

### Eligible Projects

By statute, Congestion Relief Competitive Grant Program funding may be used for a project or an integrated collection of projects, including planning, design, implementation, and construction activities, to achieve the program goals stated in Section C.2., including:

- Deployment and operation of an integrated congestion management system[2].
- Deployment and operation of a system to implement or enforce high occupancy vehicle toll lanes, cordon pricing, parking pricing, or congestion pricing.
- Deployment and operation of mobility services, including establishing account-based financial systems, commuter buses, commuter vans, express operations, paratransit, and on-demand micro-transit.
- Incentive programs to encourage travelers to carpool, use nonhighway travel modes during peak period, or travel during nonpeak periods. (23 U.S.C. 129(d)(4)).

### Eligible Locations

Projects must be in an urbanized area[3] with a population of more than 1,000,000.

### Use of Tolling

If an applicant requests construction funds only and involves tolling to implement the project, then the applicant must have authority to use tolls (Federal, State, and local, as applicable) on the project prior to receiving Congestion Relief Competitive Grant Program funds.[4]

---

[2] The term "integrated congestion management system" means a system for the integration of management and operations of a regional transportation system that includes, at a minimum, traffic incident management, work zone management, traffic signal timing, managed lanes, real-time traveler information, and active traffic management, in order to maximize the capacity of all facilities and modes across the applicable region (23 U.S.C. 129(d)(1)(B)).
[3] As defined by 23 U.S.C. 101(a)(36)
[4] Federal tolling approval as well as authorization for construction for a project selected to receive a Congestion Relief Program grant prior to the completion of the National Environmental Policy Act (NEPA) process for the proposed project may be used to inform the NEPA decision making process and the development of a tolling alternative for the proposed project. Selection to receive a Congestion Relief Program grant and Federal tolling authority should not be interpreted as a statement of consistency with or a reflection of the alternatives under consideration during the NEPA evaluation process. Selection of a project under this program in the preliminary engineering phase and prior to a NEPA determination does not indicate the project has or will receive authority to toll.

If an application proposes the use of tolls on the Interstate System, the applicant must request authority to toll the Interstate System under 23 U.S.C. § 129(d)(6)(A). This applies to Interstate highways that may already be tolling under other Federal authority. Should an entity already be tolling under a separate Federal toll authority, the applicant must agree to comply with the toll requirements of 23 U.S.C. § 129(d)(6). If an application for an eligible Congestion Relief Competitive Grant Program project proposes the use of tolls on the Interstate System, then the applicant must provide the required information as noted in the Application Template. The Secretary of Transportation may not approve the use of tolls on the Interstate System under the Congestion Relief Competitive Grant Program in more than 10 urbanized areas.

The Congestion Relief Competitive Grant Program does not provide Federal tolling authority for projects that propose the use of tolls off the Interstate System. Applicants for these projects would need to have Federal tolling authority under: (1) 23 U.S.C. § 129(a) the General Tolling Program; or (2) 23 U.S.C. § 166 the High Occupancy Vehicle Facilities.

### 3. COST SHARING

Applications not providing at least the minimum non-Federal cost share of 20 percent will be determined ineligible. See Section A.

Cost sharing means the portion of the project's cost is not paid for with Federal funds. Non-Federal sources include State funds originating from programs funded by State revenue or local revenue funding programs, or private funds. DOT will not consider previously incurred costs or previously expended or encumbered funds toward the matching requirements for any project. Additional information on non-Federal matching requirements can be found at: https://www.transportation.gov/grants/dot-navigator/understanding-non-federal-match-requirements.

### 4. OTHER

Applications determined to be late, duplicates of applications submitted for the same round of applications, or incomplete applications will not be reviewed under this funding opportunity.

If a non-State Department of Transportation (State DOT) applicant will use Federal-aid formula funds apportioned to a State DOT as part of the total project budget, the application must also include a supporting letter from the State DOT agreeing to administer the project with the non-State DOT applicant serving as the sub-recipient.

### 5. APPLICATION LIMIT

There is no limitation on the number of applications an applicant may submit. If submitting more than one application, indicate the funding priority of each application on the application cover page. DOT is not required to consider the applicant's funding priority when making selections.

## C. PROGRAM DESCRIPTION

## 1. PROGRAM PURPOSE

The purpose of the Congestion Relief Competitive Grant Program is to advance innovative, integrated, and multimodal solutions to congestion relief in the most congested metropolitan areas of the United States.

## 2. PROGRAM GOALS AND ADMINISTRATION PRIORITIES

The primary goals of the Congestion Relief Competitive Grant Program are to reduce highway congestion, reduce economic costs associated with congestion, and optimize existing highway capacity and usage of systems through a variety of methods such as improving intermodal integration with highways, highway operations, and highway performance as stated within 23 U.S.C. §129(d)(3).

The Department seeks to fund projects that advance the priorities of the Trump Administration including the Department's Freedom to Drive initiative[5], and as described in DOT's mission statement and across E.O.s. The Department intends to apply principles from DOT Order 2100.7, (Ensuring Reliance Upon Sound Economic Analysis in DOT's Policies, Programs and Activities) when evaluating applications and making award selections. Such principles include utilizing sound economic principles and analysis supported by data-driven decisions and maximizing to the extent practicable, relevant, appropriate and consistent with law, benefits for families and communities. These benefits may include, but are not limited to, economic opportunities, increased access to jobs, commercial activities, or any project components enhancing safety, and primarily benefiting families and communities by improving the quality of their lives, raising their standard of living, or enabling them to participate more fully in our economy. Further, the Department will seek to award projects demonstrating readiness and supporting economic prosperity. The merit criteria in Section F provides information on the consideration of the reinvesting in the American family, addressing core infrastructure, economic competitiveness, and innovation priorities.

## 3. PROGRAM AUTHORIZATION AND FUNDING

The Infrastructure Investment and Jobs Act (Public Law 117-58, Nov. 15, 2021) created the Congestion Relief Competitive Grant Program, codified at Title 23, U.S.C., Section 129(d), and provided up to $50 million in funding for each of FYs 2022 through 2026, less reductions due to the imposition of the annual Federal-aid highway program obligation limitation.

This NOFO includes funding of up to $100 million in FYs 2025 and 2026 funding. DOT may also award any remaining and available funds from FYs 2022 through 2024 under this opportunity.

---

[5] Freedom to Drive Initiative is advanced through projects that reduce highway congestion and address bottlenecks with solutions that apply operational strategies and technologies to maximize existing roadway capacity and accelerate projects to alleviate congestion chokepoints.

Funds for the Congestion Relief Competitive Grant Program are authorized from the Highway Trust Fund and have an obligation deadline as shown below.

| Fiscal Year Funding | FY 2025 | FY 2026 |
|---|---|---|
| **Obligation Deadline** | September 30, 2028 | September 30, 2029 |

Once obligated, funding under this opportunity does not have an expenditure deadline, but the total period of performance for the award(s) is anticipated to be between one and four years. The start of the period of performance will begin on the date of grant agreement execution.

This NOFO is subject to the availability of funding. The Government's obligation under any resulting award is contingent upon the availability of funding. There is no legal liability on the part of the Government for any payment that may arise until funds are available and obligated to an award. DOT is not obligated to make any award as a result of this notice.

### 4. AWARD SIZE

The minimum grant award under the Congestion Relief Competitive Grant Program is $10 million (23 U.S.C. 129(d)(5)(D)). There is no maximum grant award size, however, FHWA anticipates awarding less than 10 projects.

### 5. TYPE OF AWARD

The anticipated award(s) will be cost-reimbursable grant agreements. See Section G for additional information on cost reimbursement.

### 6. PERFORMANCE GOALS

For details on performance reporting requirements and goals, see Section H.

### 7. PREVIOUS AWARDS

Previous Congestion Relief Competitive Grant Program awards can be reviewed at https://ops.fhwa.dot.gov/infrastructure-investment-and-jobs-act/congestion-relief/fy2022-fy2024/awards/#awards.

### 8. BUY AMERICA REQUIREMENTS

Funds made available under this NOFO are subject to domestic preference requirements. See Section H of this NOFO for additional details. Applicants can also refer to the FHWA Construction Program Guide for more information about addressing FHWA's Buy America requirements and Build America Buy America requirements.

## D. APPLICATION CONTENTS AND FORMAT

### 1. APPLICATION FORMAT

All applications must be submitted electronically through Grants.gov.

Application files should be single-spaced, 12-point standard font (e.g., Times New Roman), with 1-inch margins. The project narrative should not exceed 25 pages in length. Files should be in PDF unless otherwise specified (e.g., Excel based forms and location files such as Shapefile or KML/KMZ).

DOT recommends applicants use a file naming format of: "[Applicant organization#]-2026-Congestion Relief" where "Applicant organization" reflects the applicant's legal name, abbreviated as appropriate, and where "#" represents the order of applicant priority for the grant, if more than one application is submitted. If necessary, the workspace title can be edited per the instructions on Grants.gov.

The application package must consist of the following:

| **All Project Types** | **Non-Construction Projects-Only** | **Construction Projects-Only** |
|---|---|---|
| **Standard Form (SF) 424** (Application for Federal Assistance) | **SF-424A** (Budget Information for Non-Construction Projects) | **SF-424C** (Budget Information for Construction Projects) |
| **SF-LLL** (Disclosure of Lobbying Activities form) | | **SF-424D** (Assurances for Construction Programs) |
| **The Congestion Relief Competitive Grant Program Application Template** (see Section D.2) must be added as an attachment to item 15 of the SF-424. | | |

## 2. APPLICATION CONTENT

### Standard Forms

All mandatory SFs of the 424 family are available for download at https://www.grants.gov/forms/forms-repository/sf-424-mandatory-family.

For more information on SF, please see: Standard Forms | FHWA.

### The Congestion Relief Competitive Grant Program Application Template

Applicants must complete the Congestion Relief Competitive Grant Program Application Template and include it as an attachment to Item 15 of their SF-424. The Application Template should provide all information necessary for DOT to determine the project satisfies the eligibility requirements described in Section B and to evaluate the criteria specified in Section F.

DOT will only review the completed Application Template and the allowable supplemental documents (*e.g*., budget, schedule, design plans, etc.) specified within the Application Template instructions.

The application must provide a budget for the project, either within the Application Template itself, or as an attachment. The budget must list the amount and percentage of both the Federal funding requested and any additional non-Federal funds, if any, to be used to pay for the project. The Application Template can be found on Grants.gov.

### 3. SHARING OF APPLICATION INFORMATION

DOT may share application information within DOT or with other Federal Agencies if DOT determines sharing is relevant to the respective program's goals.

For information on confidential business information please see: Sharing of Application Information | FHWA.

## E. SUBMISSION REQUIREMENTS AND DEADLINE

### 1. ADDRESS TO REQUEST APPLICATION PACKAGE

All application materials may be found on Grants.gov.

Once at Grants.gov, select the Search Grants tab. Then enter one of the following:

- Opportunity Number: FHWA-CRPP-27-001; or
- Opportunity Name: Fiscal Years 2025 and 2026 Congestion Relief Competitive Grant Program
- Assistance Listing Number: 20.269

Select the opportunity option, which will open to a page with several tabs. The first tab is a synopsis of the opportunity. Select the Application Package tab to download the forms needed to submit a FYs 2025 and 2026 Congestion Relief Competitive Grant Program application. The applicant must complete and submit all forms included in the application package for this notice, as contained at Grants.gov.
Should applicants have any difficulties in accessing any SFs and require paper copies, please contact the Agency contact provided in Section A of this NOFO.

### 2. UNIQUE ENTITY IDENTIFIER AND SYSTEM FOR AWARD MANAGEMENT

Each applicant must:

- Be registered in the System for Award Management (SAM) at SAM.gov before submitting its application;
- Provide a valid Unique Entity Identifier in its application; and

- Continue to maintain an active registration in SAM.gov with current information at all times during which it has an active Federal award or an application under consideration by a Federal Agency.

Please note the SAM registration process may take several weeks to complete.

### 3. SUBMISSION INSTRUCTIONS

All applications must be submitted electronically through Grants.gov. DOT does not accept applications via mail, fax, email, or other means. Additional resources on applying through Grants.gov can be found at https://www.grants.gov/applicants.

### 4. SUBMISSION DEADLINE

FYs 2025 and 2026 Congestion Relief Competitive Grant Program applications must be submitted through Grants.gov by 11:59:59 PM ET on December 17, 2026. Grants.gov attaches a time stamp to each application at the time submission is complete.

### 5. CONSIDERATION OF APPLICATIONS

Only applicants who comply with all submission deadlines described in this notice and electronically submit valid, on-time applications through Grants.gov will be eligible for evaluation and possible selection for award.

To the extent practicable, applicants should provide supporting data and documentation in a form directly verifiable by DOT. DOT may, but is not required to, contact applicants for the purpose of clarifying application information. DOT will not request additional information to perfect incomplete applications.

### 6. SUBMISSION ISSUES

For information on submission issues and more information on late applications, please see: Submission Issues | FHWA.

### 7. INTERGOVERNMENTAL REVIEW

This program is not subject to E.O. 12372, *Intergovernmental Review of Federal Programs.*

## F. APPLICATION REVIEW INFORMATION

### 1. MERIT CRITERIA

DOT will evaluate applications submitted in response to this notice using the merit criteria listed below. The ratings for each merit criteria will also be assigned a label of Highly Responsive, Responsive, or Non-Responsive. These ratings will be used at the conclusion of the merit criteria evaluation to assign the application an overall merit criteria rating of High, Medium-High,

Medium, or Low.

**Criterion #1: Reduce Highway Congestion**

In support of the DOT Freedom to Drive Initiative to reduce highway congestion and bottlenecks, FHWA seeks projects that apply operational strategies and technologies to maximize existing roadway capacity and accelerate projects to alleviate congestion chokepoints. FHWA will rate this criterion as described in the table, below:

| Merit Criteria | Highly Responsive | Responsive | Non-Responsive |
|---|---|---|---|
| **Criterion 1:**<br>**Reduce Highway Congestion**<br>Objectives:<br><br>A. The applicant provides quantifiable data demonstrating that the project area's National Highway System (NHS) facilities experience congestion meeting one of the following thresholds:<br>1. A ratio on the Travel Time Index (TTI) of 1.07 or greater (meaning travel during rush hour takes at least 7% longer than normal off-peak travel), or a ratio on the Planning Time Index (PTI) of 1.35 or greater (meaning a traveler must budget 35% extra buffer time to ensure on-time arrival 95% of the time).<br>2. The project corridor does not meet the Federal Performance Measure 3 (PM3) system performance targets that the State Department of Transportation or Metropolitan Planning Organization (MPO) established for reporting, Level of Travel Time Reliability (LOTTR, which measures consistent travel times across the highway network), Truck Travel Time Reliability (TTTR, which measures freight and commercial truck delay consistency), or Peak Hour Excessive Delay (PHED, which measures extra hours of traffic | The application demonstrates, with quantifiable data, the project will meet objectives A, B, C, D. | The application demonstrates, with quantifiable data, the project will meet at least objectives A, B, and D. | The application does not demonstrate, with quantifiable data, the project will meet at least objectives A, B, and D. |

| | | | |
|---|---|---|---|
| delay experienced during heavy traffic periods).<br>B. The project applies operational strategies and technologies to optimize existing multimodal capacity, such as a project that utilizes dynamic signage, adaptive signal phasing, or dynamic pricing.<br>C. The project alleviates (or in the case of a planning project provides strategies to alleviate) a congestion chokepoint, which may include a freight bottleneck, in a manner that does not reduce travel lanes.<br>D. The project maintains or improves (or in the case of a planning project provides strategies to improve) the current safety performance of the surface transportation system within the project area, such as a project that involves visibility upgrades (wet-reflective technology, high-durability striping, high-index retroreflective signage, etc.). | | | |

**Criterion #2: Reduce Costs Associated with Congestion and Promote Economic Competitiveness**

FHWA will evaluate how well the application addresses congestion management strategies which directly lower the economic burden on American families and businesses by using the criterion elements described below:

| Merit Criteria | Highly Responsive | Responsive | Non-Responsive |
|---|---|---|---|
| **Criterion 2: Reduce Costs Associated with Congestion and Promote Economic Competitiveness**<br>Objectives:<br>A. The application demonstrates, through quantifiable data, improved efficiencies in roadway travel which results in cost savings for American families and businesses.<br>B. The project addresses bottlenecks, including freight bottlenecks identified in the National Freight Strategic Plan, a State Freight Plan, a congestion management plan, | The application demonstrates, with quantifiable data, the project will meet objective A and at least B or C. | The application demonstrates, with quantifiable data, the project will meet objective A. | The application does not demonstrate, with quantifiable data, the project will meet objective A. |

| | | | |
|---|---|---|---|
| an Intelligent Transportation System architecture plan, or as measured by relevant freight industry associations.<br>C. The project reduces congestion in an area that supports industries of national interest including critical minerals, steel, the defense industrial base, and pharmaceutical manufacturing. | | | |

**Criterion #3: Optimize Existing Highway Capacity Including Through Emerging Transportation Technologies**

FHWA will evaluate how well the project optimizes highway capacity. FHWA will also evaluate whether the project will utilize emerging transportation technologies as follows:

| Merit Criteria | Highly Responsive | Responsive | Non-Responsive |
|---|---|---|---|
| **Criterion 3: Optimize Existing Highway Capacity Including Through Emerging Transportation Technologies**<br>The application demonstrates the project will apply operational strategies and technologies to maximize existing roadway capacity.<br>Objectives:<br>A. The project will reduce or shift highway users to off-peak travel times.<br>B. The project will coordinate modal systems to promote efficiency during peak travel times.<br>C. The project will lead to early deployments of innovative and emerging transportation technologies in the United States, reinforcing the Nation's leadership in surface transportation technology and innovation.<br>D. The project will deploy system-based performance monitoring and evaluation of an emerging, yet underutilized, technology that will meaningfully advance industry knowledge of the technology's effectiveness or assist in rapid deployment of the technology by other surface transportation facility operators. | The application demonstrates, with quantifiable data, that the project will meet objective D and at least one objective from A, B, or C. | The application demonstrates, with quantifiable data, that the project will meet at least one objective from A, B, or C. | The application does not demonstrate, with quantifiable data, that the project will meet at least one objective from A, B, or C. |

**Overall Merit Criteria Rating**

FHWA will assign an overall merit criteria rating on the following basis:

| Rating | Description |
|---|---|
| High | All merit criteria are rated Highly Responsive. |
| Medium-High | Two merit criteria, including Criterion #1, are rated Highly Responsive, and none are rated Non-Responsive. |
| Medium | All merit criteria are rated at least Responsive. |
| Low | One or more merit criteria are rated Non-Responsive. |

Only those applications receiving a Medium rating or higher for merit criteria will receive a project readiness evaluation.

## 2. PROJECT READINESS ASSESSMENT

To assess the likelihood of a successful project, DOT will consider project readiness for eligible applications receiving a Medium or higher merit criteria rating.

For the Project Readiness Assessment, DOT will consider three evaluation ratings: Technical Assessment, Financial Completeness Assessment, and Permitting Risk Assessment. DOT will use information from the Project Readiness Assessment portion of the application as well as information contained throughout the application to complete the Project Readiness Assessment. The ratings for each Project Readiness Assessment criteria will also be assigned a numerical label. These will be used at the conclusion of the Project Readiness Assessment to assign the application an overall readiness rating.

**Readiness: Technical Assessment**

The Technical Assessment will evaluate the applicant's capacity to successfully deliver the project in compliance with applicable Federal requirements and will also assess the technical feasibility of the project as described in the application. Technical Assessment ratings will be one of the following: Certain (3), Somewhat Certain (2) or Unknown or Uncertain (1), as defined in the table below.

Technical Assessment ratings will be based on:

| Rating | Certain (3) | Somewhat Certain (2) | Unknown or Uncertain (1) |
|---|---|---|---|
| **Technical Assessment Elements:**<br>A. The applicant has the technical and staffing resources to deliver the project.<br>B. The project will comply with all applicable Federal requirements.<br>C. The applicant demonstrates a commitment for timely project delivery as demonstrated by the schedule information in the application, including meeting Congestion Relief Competitive Grant Program obligation deadlines.<br>D. The applicant demonstrates the technical feasibility of the project. | The application demonstrates the applicant and project will meet all four Technical Assessment Elements. | The application demonstrates the applicant and project will meet Technical Assessment Elements B, C, and D, but may not have currently the technical or staffing resources to deliver the project but will obtain needed resources to deliver the project if awarded. | The application does not demonstrate the applicant or project will meet Technical Assessment Elements B, C, or D, or may not have currently the resources to deliver the project and does not commit to obtaining the necessary resources. |

**<u>Readiness: Financial Completeness Assessment</u>**

The Financial Completeness Assessment evaluates the availability of matching funds and whether the applicant presented a complete funding package and will receive a rating of Complete (3), Partially Complete (2), or Incomplete (1) as defined in the table below.

Financial Completeness Assessment ratings will be based on:

| Rating | Complete (3) | Partially Complete (2) | Incomplete (1) |
|---|---|---|---|
| **Financial Completeness Assessment Elements:**<br>A. The application demonstrates the costs in the estimate are reasonable and necessary to complete the project. The application includes a plan to address potential cost overruns.<br>B. The application demonstrates reasonable availability of all funding needed to complete the project with an award.<br>C. For construction projects, the proposal includes information on how future operation, maintenance and preservation costs will be funded.<br>D. For construction projects, the budget must ensure that no more than 10 percent of the grant is spent on development phase activities (23 U.S.C. 129(d)(5)(F)(i)). | The application demonstrates the applicant and project will meet Financial Completeness Assessment Elements A, B, and C; and for construction projects, will also meet Element D. | The application demonstrates the applicant and project will meet Financial Completeness Assessment Elements A and C. However, while a plan for cost overruns is provided, it is incomplete or based on approaches or funding sources not reasonably assumed available to the applicant; or for construction projects, the funding described for future operation, maintenance or preservation costs are not reasonably assumed available to the applicant. For construction projects, will also meet Element D. | The application does not demonstrate the applicant or project will meet Financial Completeness Assessment Elements A, B, or C; or (for construction projects only) D. |

**<u>Readiness: Permitting Risk Assessment</u>**

The Permitting Risk Assessment evaluates the status of the environmental approvals required for the proposed project and the likelihood other necessary approvals, permits, or public engagement will affect project obligation. The applicant must also disclose if there is open litigation concerning the project; or, if there is known, and difficult to resolve, public controversy, or agency opposition to the project on environmental grounds. This assessment will result in a rating of High Risk (1), Moderate Risk (2), or Low Risk (3), as defined in the table below.

Permitting Risk Assessment Ratings will be based on:

| Rating | Low Risk (3) | Moderate Risk (2) | High Risk (1) |
|---|---|---|---|
| **Permitting Risk Assessment Elements:**<br>A. The NEPA* review is complete or the application demonstrates NEPA will be complete in time to meet the project schedule.<br>B. All necessary permits have been obtained or the application demonstrates permits and approvals will be obtained in time to meet the project schedule.<br>C. Public engagement has occurred or will occur, and any known public controversy has been or will be addressed or mitigated.<br>D. The application discloses any known and unmitigated issues posing high risk to project delivery. Examples include litigation, known public controversy, or Agency opposition to the project on environmental grounds. | The application demonstrates the project will meet Permitting Risk Assessment Elements A, B, and C and does not have any known unmitigated risks to project delivery as shown in Element D. | The application demonstrates the project will meet Permitting Risk Assessment Elements A, B, and C, but there is risk of schedule delay because either:<br>• An environmental assessment or environmental impacts statement is needed, and the NEPA document has not been released for public review;<br>• Permit work has not started, and the schedule does not include time for schedule delays; or<br>• Public engagement has not started, and the schedule does not include time to address public input.<br>In addition, the project or program does not have any known unmitigated risks to project delivery as shown in Element D. | The application indicates risk as described in Permitting Risk Assessment Element D; or the application does not meet Elements A, B, and C. |

*For projects that would be eligible for a categorical exclusion under 23 CFR § 771.117(c), applicants should indicate this response to this item in their application.

The Project Readiness ratings described above will be translated to a High, Medium, or Low rating using the table below:

| Project Readiness Rating | Description |
|---|---|
| High | At least two readiness assessment items rated as a 3, with one readiness assessment item rated as a 2. |
| Medium | One readiness assessment item rated as a 3, with two readiness assessment items rated as a 2. |
| Low | All readiness assessment items rated as a 2, or any readiness assessment items rated as a 1. |

## 3. OVERALL RATING OF THE APPLICATION

DOT will assign each eligible application an overall rating of Highly Recommended, Recommended, or Not Recommended. The rating will be assigned on the following basis:

- A rating of **Highly Recommended** will be assigned to a project that received no less than a Medium-High rating for merit criteria and a High rating for project readiness.
- A rating of **Recommended** will be assigned to a project that received no less than a Medium rating for merit criteria and project readiness rating and did not otherwise receive an overall rating of Highly Recommended.
- A rating of **Not Recommended** will be assigned to an application that received a Low rating for either merit criteria or project readiness.

## 4. STATUTORY AND DOT PRIORITY CONSIDERATIONS

Pursuant to the statutory limitation set forth in 23 U.S.C. § 129(d)(6)(C), applicants are advised that the Secretary may not approve the use of tolls on the Interstate System under the Congestion Relief Competitive Grant Program in more than 10 urbanized areas.

After completing the merit criteria review and Project Readiness Assessment, among projects of similar application rating of Highly Recommended or Recommended, DOT will first prioritize projects based on the statutory priority considerations, then by one or more of the DOT priority considerations as described below:

**Statutory Priority Considerations**:

In providing Congestion Relief Competitive Grant Program grants, DOT shall give priority to projects in urbanized areas that are experiencing a high degree of recurrent congestion. (23 U.S.C. § 129(d)(5)(B)).

**DOT Priority Considerations:**

After completing the merit criteria review, and Project Readiness Assessment, and applying the statutory priority considerations among projects of similar merit, DOT may prioritize selections based on one or more of the conditions below.

- Priority may be given to applications which receive a high readiness rating.
- Priority may be given to applications which receive a high merit criteria rating.
- Priority may be given to applications demonstrating the project will reduce travel costs for families or improve access to economic opportunities.
- Priority may be given to applications demonstrating the project will improve intermodal or multimodal freight mobility or supply chain efficiency.
- Priority may be given to projects deploying innovative solutions to congestion relief without limiting vehicle capacity or creating artificial chokepoints.
- The project improves access to national security and defense facilities or facilitates movement of military cargo or personnel.
- The project will repurpose existing specialized travel lanes for bicycles, buses, or pedestrians for general purpose use by any motor vehicle, including single-occupant motor vehicles, and will meet the Congestion Relief program purpose, will reduce congestion on the facility, will address safety consistent with the merit criteria described in Section F of this NOFO, and will comply with applicable Federal requirements, including the Clean Air Act and criteria under 23 U.S.C. 217(e).

## 5. REVIEW AND SELECTION PROCESS

DOT will review applications received by the deadline for completeness and eligibility based on the information found in Section B of this notice. This review phase is referred to as the intake and eligibility review. Applications that pass the intake and eligibility review will be evaluated by the Technical Review Team (TRT), and once evaluated and rated, will then be evaluated by the Senior Review Team (SRT), to determine which applications are presented to DOT leadership for final selection, as described below.

### Technical Review

The evaluation of eligible applications will be conducted by a TRT, comprised of DOT and FHWA staff. TRT will evaluate each application passing the initial intake and eligibility review against the merit criteria in Section F. TRT will then complete the Project Readiness Assessment as described under Section F to determine which applications are rated as Highly Recommended, Recommended, or Not Recommended.

TRT will then evaluate each Highly Recommended and Recommended application for its responsiveness to the statutory priority considerations and DOT priority considerations. TRT will send to the FHWA SRT information on all eligible applications including the rating for each merit criterion, the Project Readiness Assessment rating, and the evaluation of responsiveness to the statutory priority considerations and DOT priority considerations.

### Senior Review

FHWA SRT may consist of officials from the Office of the Secretary of Transportation, the FHWA Administrator, and others in senior leadership positions requested to serve by the FHWA

Administrator. FHWA SRT will determine which projects advance to DOT leadership for final selection. DOT leadership has the discretion to determine which applications best address the Congestion Relief Competitive Grant Program merit criteria, Project Readiness Assessment, and selection considerations, and should be selected for award.

The Department intends to apply principles from DOT Order 2100.7 (Ensuring Reliance Upon Sound Economic Analysis in DOT's Policies, Programs and Activities) and DOT Order 2100.9 (Ensuring Nondiscrimination and Equal Opportunity in Department of Transportation Policies, Programs, and Activities) when evaluating applications and making award selections. To the maximum extent permitted by law, DOT will prioritize projects that are in alignment with the principles outlined in DOT Orders 2100.7 and 2100.9.

The Secretary of Transportation cannot approve the use of tolls on the Interstate System under the Congestion Relief Competitive Grant Program in more than 10 urbanized areas.

**Reduced Awards**

In accordance with Section D of this NOFO, DOT may enter into discussions with an applicant to discuss, if mutually agreeable, a lesser scaled amount of a potential award. This may occur because of the quantity, size and scope of the applications received in response to this notice and the results of the application review process.

## 6. APPLICANT RISK ASSESSMENT

Prior to award, each selected applicant will be subject to a risk assessment required by 2 CFR § 200.206. DOT must review and consider any information about the applicant in the designated integrity and performance system accessible through SAM.gov. An applicant may review information in SAM.gov and comment on any information about itself that a Federal awarding Agency previously entered. DOT will consider comments by the applicant, in addition to other information in SAM.gov, in making a judgment about the applicant's integrity, business ethics, and record of performance under Federal awards when completing the risk assessment. DOT reserves the right to deny an award based on the results of the risk assessment or include special conditions that correspond to the degree of risk assessed may be applied to the Federal award in accordance with 2 CFR § 200.206.

DOT will consider the following factors in its risk assessment in accordance with 2 CFR § 200.206:

- Financial stability-the applicant's record of effectively managing financial risks, assets, and resources;
- Management systems and standards-quality of management systems and ability to meet the management standards prescribed in this part;
- History of performance, if applicable-the applicant's record of managing previous and current Federal awards, including compliance with reporting requirements and conformance to the terms and conditions of Federal awards, if applicable; audit reports

and findings-reports and findings from audits performed under subpart F or the reports and findings of any other available audits, if applicable; and

- Ability effectively to implement requirements-the applicant's ability effectively to implement statutory, regulatory, or other requirements imposed on recipients of Federal awards.

## G. AWARD NOTICES

### 1. HOW PROJECT SELECTIONS ARE ANNOUNCED

Following the evaluation outlined in Section F, DOT will announce awarded projects by posting a list of selected projects at: https://ops.fhwa.dot.gov/infrastructure-investment-and-jobs-act/index.htm.

Congestion Relief Competitive Grant Program grants will be awarded upon the execution of a grant agreement between DOT and the recipient. Notice of selection is not authorization to begin performance or to incur costs for the proposed project.

Unsuccessful applicants may request a debriefing up to 90 days after the selected funding recipients are publicly announced. The request must be submitted by the applicant identified on the SF-424. The debrief will be limited to how the application responded to the grant program evaluation criteria described in Section F of the NOFO. All debrief requests should be submitted to congestion.relief@dot.gov.

### 2. REIMBURSEMENTS AND COSTS INCURRED PRIOR TO AWARD AND OBLIGATION OF GRANTS

Unless authorized by DOT in writing after announcement of FYs 2025 and 2026 Congestion Relief Competitive Grant Program selections, any costs incurred prior to DOT's obligation of funds for a project are ineligible for reimbursement and are ineligible cost share requirements. DOT will primarily administer grants on a reimbursement basis. Under the reimbursement approach, DOT funds will reimburse recipients only for costs incurred after execution of a grant agreement for costs DOT determines to be allowable, reasonable, and allocable, as defined under 2 CFR Part 200, and after the recipient submits valid requests for reimbursement.

If a recipient cannot complete a project on a reimbursable basis DOT will, on a case-by-case basis, consider recipient requests to use alternative payment methods as described under 2 CFR 200.305(b).

## H. POST-AWARD REQUIREMENTS AND ADMINISTRATION

### 1. ADMINISTRATIVE AND NATIONAL POLICY REQUIREMENTS

**Administrative Requirements**

All awards will be administered pursuant to the FHWA Competitive Grant Program General Terms and Conditions, and the Uniform Administrative Requirements, Cost Principles and Audit Requirements for Federal awards found in 2 CFR Part 200, as adopted by DOT at 2 CFR Part 1201. Applicable Federal laws, rules, and regulations set forth in Title 49 of the CFR, shall apply to awards provided under this program.

In connection with any program or activity conducted with or benefiting from funds awarded under this notice, recipients of funds must comply with all applicable requirements of Federal law, including, without limitation, the Constitution of the United States; the conditions of performance, non-discrimination requirements, and other assurances made applicable to the award of funds in accordance with regulations of DOT and FHWA; and applicable Federal financial assistance and contracting principles promulgated by the Office of Management and Budget (OMB). In complying with these requirements, recipients must ensure that no concession agreements are denied, or other contracting decisions made on the basis of speech or other activities protected by the First Amendment. If DOT determines a recipient has failed to comply with applicable Federal requirements, DOT may terminate the award of funds and disallow previously incurred costs, requiring the recipient to reimburse any expended award funds.

## Program Requirements

### Financial Effects on Low-Income Drivers

Projects selected to receive a Congestion Relief Competitive Grant Program grant must comply with 23 U.S.C. § 129(d)(7) Financial Effects on Low-Income Drivers. A project funded with Congestion Relief Competitive Grant Program funds shall include, if appropriate, an analysis of the potential effects of the project on low-income drivers and may include mitigation measures to deal with any potential adverse financial effects on those drivers.

### Critical Infrastructure Security, Cybersecurity and Resilience

It is the policy of the United States to strengthen the security and resilience of its critical infrastructure against all threats and hazards, including physical and cyber risks, consistent with National Security Memorandum 22 to secure and enhance the resilience of U.S. Critical Infrastructure. Each applicant selected for Federal funding must demonstrate, prior to the signing of the grant agreement, effort to consider and address physical and cyber security risks relevant to the transportation mode and type and scale of the project. Projects that have not appropriately considered and addressed physical and cyber security and resilience in their planning, design, and project oversight, as determined by DOT and the U.S. Department of Homeland Security, will be required to do so before receiving funds.

### Domestic Preference Requirements

As expressed in E.O. 14005, *Ensuring the Future Is Made in All of America by All of America's Workers* (86 FR 7475), the executive branch should maximize, consistent with law, the use of goods, products, and materials produced, and services offered in, the United States. Funds made available under this notice are subject to FHWA's steel, iron, and manufactured product

domestic requirements at 23 U.S.C. § 313 and 23 CFR § 635.410, and the construction materials domestic preference requirement at Pub. L. 117-58, div. G §§ 70901–70927, as implemented by OMB at 2 CFR Part 184. DOT expects all applicants to comply with those requirements.

**Federal Anti-Discrimination**

Except where prohibited by court order, pursuant to E.O. 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, as a condition of grant award, each recipient must agree that its compliance in all respects with all applicable Federal anti-discrimination laws is material to the Government's payment decisions for purposes of Section 3729(b)(4) of Title 31, U.S.C.

Except where prohibited by court order, pursuant to E.O. 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, as a condition of grant award, each recipient must certify that it does not operate any programs promoting diversity, equity, and inclusion initiatives that violate any applicable Federal anti-discrimination laws.

To the extent a court order bars the implementation or enforcement of one or more of these provisions with respect to a particular applicant or recipient, DOT will not implement or enforce the relevant provision(s) against that applicant or recipient for as long as the order remains in place.

**Compliance with Federal Law and Policies**

Except where prohibited by court order, the applicant assures and certifies, with respect to any application and awarded project under this NOFO, it will comply with all applicable Federal laws, regulations, E.O.s, policies, guidelines, and requirements as they relate to the application, acceptance, and use of Federal funds.

## 2. REPORTING

Each applicant selected for Congestion Relief Competitive Grant Program funding must submit semi-annual progress reports and semi-annual SF-425 to monitor project progress and ensure accountability and financial transparency in the program.

Each Congestion Relief Competitive Grant Program awardee must collect and report to DOT information on performance measures as detailed within the project grant agreement.

Per the Performance and Program Evaluation statement on the FHWA Website, DOT reserves the right to request additional information, if deemed needed, to better understand the status of the project. The successful applicant will provide additional financial reporting beyond the quarterly reporting if such statements are necessary to address DOT's Stewardship and Oversight responsibility of the awarded grants funds. The successful applicant also agrees to allow periodic project inspections and DOT will provide notice for such inspections.

# EXHIBIT C

Gothamist

Donate

NEWS

# Trump said congestion pricing would end NYC. Now, his admin wants it in more cities.




US DOT



By Stephen Nessen
Published Nov 18, 2026
Modified Nov 18, 2026
58 comments

Share

**We rely on your support to make local news available to all**
Make your contribution now and help Gothamist thrive in 2026. Donate today

President Donald Trump once declared congestion pricing would kill New York City. Now, his administration wants to help other cities set up similar tolling programs for drivers.

The Federal Highway Administration announced Wednesday it is offering $100 million in grants so other cities can implement their own programs to fight traffic congestion.

The agency said in a release that the funding would allow cities with more than 1 million people to apply for the funds to help monitor and manage traffic, create "HOV toll lanes, as well as congestion, cordon and parking pricing programs." The federal money can also be used on commuter buses, paratransit and micromobility.

Shortly after Gothamist published this article, "congestion" and "cordon" pricing programs were deleted from the Federal Highway Administration's announcement. Cordon tolls are a technical term for a toll imposed on drivers to enter a designated zone, like a central business district.

MTA Chair Janno Lieber reveled in the apparent change of heart.

"I say they've been hacked or (Transportation Secretary) Sean Duffy's been reading the press on this subject. But either way, that's a pretty remarkable about-face," Lieber said Wednesday. "And I think it really speaks to the fact that this program has not only survived legally, but has been such a success, in its implementation."

Last spring, a federal judge declared the Trump administration's efforts to revoke approval for congestion pricing unlawful. The MTA successfully defended numerous other lawsuits seeking to halt the program, which charges drivers $9 during peak periods to drive in Manhattan south of 60th Street. Toll revenue is used to fund public transit.

“Gridlock is costing Americans time with their families and money from their wallets,” FHWA Administrator Sean McMaster wrote in a release. “This program brings much-needed relief to our most congested metropolitan areas. Alongside building new capacity, the program uses cutting-edge technology to maximize the efficiency of our highways.”

On Thursday morning, U.S. Department of Transportation spokesperson Danna Almeida sought to draw a distinction between congestion pricing in Manhattan and the types of programs that could be funded through the new grants.

"As the statute is written, the grant program is nothing like New York City’s illegal cordon pricing program, nor does it impact the ongoing litigation," Almeida said.

"The Secretary has been clear, dollars collected from tolling should be reinvested back into roads and drivers should have access to free alternative routes.”

She added that the Trump administration would fund projects that advance its priorities.

New York City's congestion pricing tolls have been in effect for nearly two years. The MTA reports traffic is down 15% in Manhattan since the tolls were turned on. The agency says the tolls have raised hundreds of millions of dollars used to secure billions of dollars in bonds to fund capital projects.

“It may have taken nearly two years of unquestionable results and repeated losses in court to understand, but we are glad that Secretary Duffy has seen the light," Sean Butler, a spokesperson for Gov. Kathy Hochul, said in a statement. "Congestion pricing works and we welcome any attempt to emulate New York’s huge success."

Lieber reflected on the fight to implement congestion pricing during an event Wednesday night at WNYC's Greene Space. He said the lengthy process to get it approved under the Biden administration wound up helping the MTA protect the program from Trump's legal attacks.

"There are improvements to air quality documented, a reduction in crashes that injure pedestrians and cyclists," Lieber said. "There's a dramatic reduction in the number of noise complaints to 311. And even the drivers have shifted in polls because they are recognizing the value of the time they're saving, especially on the crossings in, in and out of Manhattan."

*This story has been updated to reflect the edit of the Federal Highway Administration announcement and a new statement from US DOT.*